JAMES M. BRADEN (SBN 102397)
LAW OFFICES OF JAMES M. BRADEN
44 MONTGOMERY STREET, SUITE 1210
SAN FRANCISCO, CA  94104

TELEPHONE: (415) 398-6865
FACSIMILE:  (415) 788-5605
EMAIL:         braden@sf-lawyer.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY J. AUSTIN, an individual; FURAMA LOS ANGELES, INC., a California corporation; and DRAGON CHARM, a Delaware Limited Liability Company,<br><br>                          Plaintiffs,<br><br>v.<br><br>GRAHAM TAYLOR, ESQ.; DEWEY LEBOEUF LIQUIDATING TRUST,: AS SUCCESSOR TO DEWEY LEBOEUF, (AS SUCCESSOR TO LEBOEUF LAMB, TOGETHER WITH ALL PARTNERS OF SAID LAW FIRM (AND ASSOCIATES) (COLLECTIVELY "LEBOEUF"); DEUTSCHE BANK AG; IRA AKSELROD, ESQ.; PROSKAUER ROSE LLC (THE "PROSKAUER DEFENDANTS");              : R. J. RUBLE, ESQ.; and SIDLEY AUSTIN BROWN & WOOD LLC<br><br>                          Defendants. | Case No. 3:15-cv-00162<br><br><br>COMPLAINT FOR BREACH OF CONTRACT, LEGAL MALPRACTICE, FRAUD, AND CIVIL CONSPIRACY |

1

1. The parties in this matter are diverse and the amount in controversy exceeds $75,000 exclusive of interest and costs.  Jurisdiction is invoked pursuant to USC Secs. 1331, 1332, 1337, and 1343, i.e. on the basis of both Federal Question and Diversity of Citizenship.

2. Plaintiff Furama Los Angeles, Inc. ("FLA") is or was a California corporation operating a hotel in Los Angeles CA.

3. Plaintiff Dragon Charm, LLC ("DCLLC") is or was a  Delaware limited liability company which was involved in transactions described herein.

4. Plaintiff Larry J. Austin ("Austin") is a resident of Virginia and is or was President of FLA, and managing member of DCLLC having a significant interest in DCLLC.

5. Defendant is Graham Taylor ("Taylor") is an Australian born U.S. citizen, at all times relevant hereto, a resident of the State of California was a tax attorney licensed to practice in New York and California.

6. Defendant LeBoeuf was at the time of the actions complained of herein was a professional corporation offering legal services around the world, based in New York, New York and having several offices, including its offices in San Francisco, CA.

7. Defendant Prokauer Rose LLC at the time of the actions complained of herein was a professional corporation offering legal services around the world, based in New York, New York and having several offices elsewhere.

8. Defendant Deutsche Bank, AG is a corporation offering both commercial banking and investment banking services around the world, with a U.S. headquarters in New York, New York and at the time of this transaction, a significant office based in Hong Kong, China.

9. Charles Lee is a resident of the State of California, upon information and belief licensed to practice law in New York and California.

2

**COMPLAINT FOR BREACH OF CONTRACT,**
**LEGAL MALPRACTICE, FRAUD, AND CIVIL**
**CONSPIRACY**

10.     Defendant Sidley Austin Brown & Wood at the time of the actions complained of herein was a professional corporation offering legal services around the world, based in New York, New York and having several offices elsewhere.

11.     Defendants Ruble and Akselrad, upon information and belief, are residents of New York and at the times complained of herein offered legal services from offices in New York, New York.

COUNT I:  BREACH OF CONTRACT

12.     Plaintiff Austin had engaged Defendant Taylor and Defendant LeBoeuf as his lawyers by an engagement letter entered into in about 1999, for legal services including formation of various corporations, limited liability companies, trusts, as well as other entities, negotiations on acquisition of various assets and/or companies, and many legal opinions regarding, inter alia, the due and proper formation of said entities, the negotiations to acquire and deploy assets involved in many separate transactions, the satisfaction and compliance with all applicable federal, state and local laws in the U.S., including, but not limited to, securities law, the Environmental Protection Act, the Pension Benefit Guaranty laws, the laws regarding taxes, (both income and property taxes), as well as the required registrations, or exemption from registration under banking, securities and tax laws of the U.S.

13.  Plaintiff Austin, et al engaged Defendant Proskauer Rose LLC ("Proskauer") to review the work of Defendant Taylor and Defendant LeBoeuf, for the purpose of providing a second check as to the transactions and rendering a formal opinion as to the availability of tax benefits and the lack of a need for the Austin Plaintiffs to register under any U.S. tax regimes.

14.  Defendant Deutsche Bank AG, (the "Bank") was at the time of the actions complained of herein was a corporation offering investment banking services around the world, based in New York, New York and specifically including offices in Hong Kong where it offered to Plaintiff Austin certain distressed loan assets the Bank had located, researched and negotiated for acquisition from CINDA Asset Management Company, a government sponsored enterprise which had acquired a number of assets from a bank owned by the Peoples Republic of China

**COMPLAINT FOR BREACH OF CONTRACT,
LEGAL MALPRACTICE, FRAUD, AND CIVIL
CONSPIRACY**

15.     Defendants Taylor, Lee, LeBoeuf, and Proskauer gave legal advice to Plaintiffs that they would not incur any California taxes, penalties and interest under facts stated in their advice.

16. In about 2014, the California Franchise Tax Board ("CAFTB") assessed about $4.5M in income taxes, penalties and interest against FLA for certain FLA income, which Defendants' legal advice had advised would not be incurred.

17. In about 2014, the California Franchise Tax Board ("CAFTB") assessed about $675K in penalties and interest against DCLLC for certain DCLLC income, which Defendants' legal advice had advised would not be incurred.

18. In about 2014, the California Franchise Tax Board ("CAFTB") assessed about $7M in income taxes, penalties and interest against Austin for certain Austin income from DCLLC, which Defendants legal advice had advised would not be incurred.

19. Defendants Taylor, LeBoeuf, and Proskauer breached their contracts by giving such advice.

20. Defendants Taylor, Lee, and LeBoeuf advised Austin that he could set up a bank account at Citibank Korea in his individual name and would not be liable for any taxes as a result of such account.

21. IRS has assessed income taxes, penalties & interest of about $500,000 for income derived in connection with that account.

COUNT II:  LEGAL MALPRACTICE

22. Allegations in paragraphs 1 – 19 herein are incorporated by reference.

23. Defendants Taylor, Lee, LeBoeuf, and Proskauer gave legal advice that the California and Federal taxes described above would not be incurred.

24. Such advice did not meet the standard of care required of lawyers giving such advice.

4

**COMPLAINT FOR BREACH OF CONTRACT,
LEGAL MALPRACTICE, FRAUD, AND CIVIL
CONSPIRACY**

25. But for their advice and Plaintiffs' reliance thereon, Plaintiffs would not have incurred the California and Federal taxes described herein.

COUNT III: FRAUD

26. Allegations in paragraphs 1 – 23 herein are incorporated by reference.

27. Defendants' misrepresentations were knowingly false.

28. Plaintiff relied on that misrepresentation by failing to take steps to protect himself from CA penalties, etc

29. Defendants knew that Plaintiff was so relying.

30. In so relying, Plaintiff was damaged when CA assessed tax penalties against Plaintiffs in the amount stated above.

COUNT IV: CIVIL CONSPIRACY

31. Allegations in paragraphs above are incorporated by reference.

32. Defendants' legal advice and representations describe above were provided to Plaintiff in Virginia, Plaintiffs' acts described above in reliance on such legal advice and representations occurred in Virginia, Defendant Taylor and others from Defendant LeBoeuf made trips to Austin Plaintiff's in Plaintiff Austin's offices in Alexandria, VA, and in the course of this transaction frequently made telephone calls to, and sent physical documents to said Austin offices, and all damages described herein accrued to Austin Plaintiffs while they were in Virginia.

33. Defendants secretly entered into an agreement and conspiracy to intentionally, wrongfully, and without sufficient cause, wrongfully advise Austin Plaintiffs about their individual California tax liabilities and exposure to various registration requirements under applicable state and federal laws and conceal from Austin Plaintiffs certain facts which rendered Defendants' actions ineffective, misleading or fraudulent.

5

**COMPLAINT FOR BREACH OF CONTRACT, LEGAL MALPRACTICE, FRAUD, AND CIVIL CONSPIRACY**

34. Defendant lawyers and law firms participated in this conspiracy by their acts alleged above which failed to meet the standard of case, and as may be proved at trial.  Each non-lawyer Defendant participated in this conspiracy by their acts alleged above in concert with the other non-lawyer Defendants, and as may be proved at trial.

35. Defendants worked in coordination with each other, communicated with each other, and conspired with one another, to wrongfully advise Plaintiffs about their tax obligations as described herein.

36. Defendants, individually and jointly with each other, wrongfully advised Plaintiffs as described herein secretly and without publication to any other person, party, or organization.

37. Defendants, individually and jointly, were trusted by Plaintiffs to faithfully perform their duties as lawyers, and contractual  obligations detailed herein

38. As results of such acts, conspiracy, and violations of such statutory duties and contractual obligations, Defendants jointly and severally have caused damages to Plaintiff for damages described herein, attorney's fees, court costs, punitive damages, treble damages, and other money damages as shall be proved at trial, in the amount as described herein.

39. Law Firm Defendants engaged in Larceny by Trick in taking substantial legal fees from Austin Plaintiffs for services which were ineffective, legally unfounded and/or ill-advised, and as such caused Austin Plaintiffs both the loss of the benefit of the funds so paid and exposed Austin Plaintiffs to considerable additional, on-going damages in the form of tax matters prosecution, liens, as well as the expenses of defending against same, and the damage to Austin Plaintiffs in the business community, including lost opportunities to pursue further business.

40. Law Firm Defendants engaged in breach of warranty under the Uniform Commercial Code by rendering to Austin Plaintiffs and offering into commerce a product or service, to wit, legal opinions and legal services,

6

which were unfit for the purpose acquired, and then entering into a conspiracy to conceal such defects from Austin Plaintiffs.

41. Defendant Bank engaged in breach of warranty by offering to Austin Plaintiff's law firms and accounting firms information (and purported actions by Bank) (described in Banks' relayed due diligence history relayed to Austin Plaintiffs and advisors), alleged by Bank to affiliates of Austin Plaintiffs to have been done by the same legal (particularly Defendant Sidley) and accounting teams as Austin Plaintiffs and/or affiliates had engaged in similar transactions, to the same standards required by Austin Plaintiffs, when in fact Defendant Bank knew or should have known that said Chinese distressed assets were from a suspect source, that Defendant Bank had carefully controlled the due diligence process to omit or caused to be omitted critical information, hence Defendant Bank in December, 2001 took a US Dollar $1,000,000.00 fee for sourcing distressed Chinese loan assets, the origin, value and provenance of which proved to be fraudulent or fraudulently represented.

42. California's FTB has given Plaintiff Austin Notice of Assessments of nearly $8,000,000.00 and claims those same penalties inure to Plaintiff Austin in his personal capacity.

43. Had Plaintiff Austin known of any significant exposure on a personal level to such incredibly damaging fines, levies, and taxes, Plaintiff Austin would not have done this trade, or in the least, would not have done this transaction in the same way as Defendants Taylor and LeBoeuf advised.

44. Defendants Taylor and LeBoeuf, having engaged in California law practice for many years, were in a far better position than Austin Plaintiffs to know if the corporate shield of liability created by the structures formed by Defendants Taylor and LeBoeuf.

45. Defendants Sidley, Ruble, Akselrad and Proskauer knew or should have known the distressed Asian asset acquisition transaction they extensively reviewed, opined on and demanded revisions to, (the "Originating

**COMPLAINT FOR BREACH OF CONTRACT, LEGAL MALPRACTICE, FRAUD, AND CIVIL CONSPIRACY**

Asset Transaction,") yielded distressed Asian assets for the very use to which they were put in the Furama trade, yet said Defendants failed to disclose a) any defects in said Originating Asset Transaction, or b) the Law Firm Defendants' own impairment which rendered their respective legal opinions worthless and called into question their respective legal work in the sourcing, selection, due diligence work for, negotiation for, documentation of and consummation of the Originating Asset Transaction, as did Defendants Taylor and LeBoeuf, who had employees on the ground in Korea and China attending, advising on, negotiating and drafting documentation to implement each of said trades.

46. Defendants Taylor and LeBoeuf knew or should have known the Furama Hotel acquisition and sale transaction they designed, drove, extensively reviewed, opined on and demanded revisions to, (the "Furama Transaction,") yielded certain taxability issues which were central to the successful consummation of same, and proposed and implemented the use of the distressed Asian assets in the Furama trade, yet said Defendants failed to disclose a) any defects in said Originating Asset Transaction, or b) the Furama Transaction, or c) Defendants' Taylor's and LeBoeuf's own respective impairments, which rendered their respective legal work and opinions worthless and called into question their respective legal work in the sourcing, selection, due diligence work for, negotiation for, documentation of and consummation of the Originating Asset Transaction.

47. As a result, Austin Plaintiffs expended many hundreds of thousands of dollars as well as considerable time in a trade, relying on the assurances of Defendants Taylor and LeBoeuf the Furama Transaction was properly structured, hence would not result in any surcharge, unexpected tax liability, fines, penalties and certainly was put together in such a way there would be no individual personal exposure to the penalties Noticed by the California FTB.

**COMPLAINT FOR BREACH OF CONTRACT, LEGAL MALPRACTICE, FRAUD, AND CIVIL CONSPIRACY**

1    Dated: January 12, 2015.                    Respectfully submitted,

2                                                LAW OFFICES OF JAMES M. BRADEN

3                                                By:___/s/_James Braden_____

4                                                James M. Braden
5                                                Attorney for Plaintiffs

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
                                          9
28
**COMPLAINT FOR BREACH OF CONTRACT,**
**LEGAL MALPRACTICE, FRAUD, AND CIVIL**
**CONSPIRACY**